JASON HAMILTON *versus* RICHARD H. GODING.

The owner of intoxicating liquors held in this State, and intended for illegal sale in this or another State, may maintain trespass *de bonis* against the unauthorized conversion of them by a sheriff, acting by his deputy, under color of his office.

The recovery in trespass of the value of intoxicating liquors thus held, and the consequent transfer of the title to them to the defendant by the mere operation of law, do not constitute a sale "by any person or persons," within the spirit of c. 33 of the Public Laws of 1858.

ON EXCEPTIONS.

TRESPASS DE BONIS, for taking and carrying away 515 gallons of whiskey belonging to the plaintiff and stored in Biddeford, in this county.

It appeared that the plaintiff purchased the whiskey in controversy, May 12, 1865, in Boston, of Smith & Willis, and had it shipped to and stored in Biddeford; that he intended to sell the liquor at North Conway, N. H., whenever he should transport it there; that he had not sold any there; that he had engaged a store there and had had some negotiations with a person to go there and sell for him; that one Durgin, a deputy of the defendant, attached said whiskey on a writ in favor of *James Slade* v. *Smith & Willis*, and carried it away; and that it was worth from $3,50 to $4 per gallon. The statute of New Hampshire was put into

the case by the defendant.    There was also evidence tending to show that the plaintiff intended to sell the liquors illegally in *this* State.

The presiding Judge instructed the jury that the evidence in this case relative to the intention of the plaintiff to sell the liquors in *this* State, or in the State of New Hampshire, does not preclude the plaintiff from maintaining this action, if he has suffered damage from the unauthorized act of the defendant acting by his deputy under color of office, but they might consider the evidence upon that matter so far as it affected the question of damages.

The intoxicating liquors kept and deposited and intended for sale in this State, in violation of law, are declared contraband; such liquors are not declared in direct terms to be a "common nuisance."

That they are the subject of property, and are not in and of themselves a "common nuisance."    That if so at all they are made so under certain circumstances by the statute, and, the statute having provided a mode of abatement, that mode must be followed in abating.

The presiding Judge submitted the question of unlawful intent by written interrogatory for special finding, and the jury found that the liquor was not intended for unlawful sale in this State.

The defendant requested the presiding Judge to give the following instructions to the jury: —

1st. That the defendant is not liable as sheriff for the acts of Durgin, his duputy, in attaching these spirituous and intoxicating liquors at the direction of the plaintiff in the writ of attachment, and without the knowledge or assent of the defendant.

2d. No action can be maintained in this State against one who wrongfully takes and converts spirituous and intoxicating liquors, by one who has them deposited or in possession here with the intention of selling them in another State, in violation of the laws of the other State.

But he declined, and instructed them that the evidence

in this case, relative to the intention of the plaintiff to sell the liquors in question in the State of New Hampshire, does not preclude the plaintiff from maintaining this action.

The verdict was for the plaintiff, and the defendant alleged exceptions, and moved the special finding be set aside as against the weight of evidence.

*S. W. Luques*, in support of the exceptions.

Holding intoxicating liquors in this State for the purpose of sheltering them securely in a place of deposit here, from which they may from time to time be smuggled into an adjoining State, there to be distributed in violation of laws made for the protection of public morals, is a gross violation of the great fundamental moral law enunciated for the government of States as well as individuals, and contrary to public policy. Broome on the Common Law, 359, 365–6; *Holman* v. *Johnson*, 1 Cowp., 343.

The laws of Maine and New Hampshire prohibit the indiscriminate sale of intoxicating liquors, and the possession of such liquors with intent to sell them illegally.

These laws were not enacted for mere revenue purposes; their main object was the protection of public morals and the suppression of crime. Anything done in contravention thereof must necessarily be prohibited. *Ritchie* v. *Smith*, 6 M., G. & Scott, 475, 476. Inter-state comity, good faith, good morals, our own safety forbid the maintenance of this suit. Counsel cited *Lord* v. *Chadbourn*, 42 Maine, 429.

The special finding was wrong.

The instruction that it was unimportant whether plaintiff had these liquors for illegal sale or not, in this State, is erroneous.

The acquisition of title by judgment has all the elements of acquisition by contract. 2 Kent's Com., 387–8, and cases *infra*. There can be no judicial sale of liquors. *Nichols* v. *Valentine*, 36 Maine, 322. If case at bar is sustained, a man may *take* a gallon of whiskey, be sued and pay for it on execution. Why may not he settle damages before suit,

or plaintiff waive the tort and bring assumpsit? One's right to *hold merely*, and not to sell, may be sustained by replevin.

*Ira T. Drew*, for the plaintiff.

KENT, J. — The defendant, who is sheriff of the county, took and carried away, by his deputy, from the possession of. the plaintiff, who was the owner, certain liquors. Although this was done under the command of a writ, against a third party, as appears by the evidence introduced by the plaintiff, yet the defendant sets up no defence on that ground, but at the trial abandoned all attempts to justify the taking under legal process.

The defendant then appears to stand as a naked trespasser, having taken the property away and setting up no defence for his act peculiar to himself, but claiming that he, or any other private citizen, might do the acts that he did with legal impunity, because the articles taken were not property, protected by law, for the taking or destruction of which the law would ·afford redress. The case presents the naked question, whether intoxicating liquors, owned and possessed by an individual, he having an intention to sell them illegally at some time thereafter, are, by this intention, unexecuted, so absolutely and entirely put out of the protection of the law, that any other person may, at his will and pleasure take, carry away and convert them to his own use, or destroy them, with entire impunity, and without color of legal authority, or individual right in them; or in other words, are they outlawed?.

It is admitted that there is nothing in the nature of the article in question, which, independently of any statute, renders it incapable of being a subject of property. The common law never has so declared. Indeed, until within a few years, spirituous liquors have been regarded as property, without limitation or qualification. A hogshead of rum was exactly the same, as an article of property and merchandise, as a hogshead of sugar. And, whatever the Legislature might do if it saw fit, we find no existing provision

which declares that no person can acquire property in liquors. But, on the contrary, we find a constant recognition of such right of property in individuals for their own use, by towns, and even in those liquors which have been seized and confiscated under process of law, and delivered by decree to the municipal authorities. This purging process restores the liquors to their original condition as articles of property. This point is fully discussed and clearly stated in *Preston* v. *Drew*, 33 Maine, 558, where the generality of the language which prohibited any action of any kind for the recovery or possession of intoxicating liquors or the value thereof was limited and restrained so as not to apply to liquors held legally and not intended for illegal sale. And this, on the ground that such must have been the intention of the Legislature, notwithstanding the very positive and apparently all embracing language of the statute. Otherwise property which the law had always protected and still recognized would be precluded from the benefit of the constitutional provision, — the right of every man to acquire; possess and have protected, property, and its practical enforcement in the provision that " every person for an injury done him in person, property, reputation or immunities shall have remedy by due course of law." These provisions would be rendered nugatory and unavailable. *Fisher* v. *McGinn*, 1 Gray, 33. It is therefore clear, to start with, that something more must be established against the liquors, than the fact that they are spirituous and intoxicating and by their use cause serious and sad effects in the community.

If then, such liquors are property at the common law, and entitled to protection as such against the unjustifiable or inexcusable acts of third parties, — the question is how far the Acts of the Legislature restricting or prohibiting the manufacture, sale or keeping or possessing of such liquors, have given or attempted to give a right to any and all persons at their pleasure to take and carry away, and convert to their own use, or to destroy them, when held with an illegal intent.

It is certain that there is no such express provision, — no language which directly and in terms confers such powers. If it exists it must be derived by inference drawn from the language of the statute, and its scope and purpose. It is a power of too transcendent a nature, and too much opposed to the general spirit of our laws to be legally inferred, or hastily sanctioned.

It is to be observed that the general scope of all the provisions is to remedy or prevent a public evil, — one affecting the community as a body politic, and calling for the aid of the law and its officers to enact and execute such provisions as shall reach and overcome, if possible, such evil. Individuals are, undoubtedly, sufferers, but it does not therefrom follow that the law is to be executed, without the sanction of the forms of law, by the individuals who may suffer, in one form or another, the evils resulting from the uncontrolled sale of liquors. The apparent intent is, that this law, like all other laws for preventing and punishing crime, is to be enforced by the officers of the law, under the forms provided, and by the existing courts of law.

The *status* of this liquor in question before us, is exactly this : — It was the property of the plaintiff, if it was capable of being the subject of property. It was held by him at the time it was taken, with the intention on his part to sell it in violation of the law of the State. What was the legal effect upon this liquor, when this intent was formed? Before such intent, it was property and fully recognized and protected. Did the intent, when formed, take from it the capacity of being property, — divest the owner of all right to have it protected, and take away all remedy by due course of law for the injury done to his property? Did it become derelict, so that any one might seize it and destroy it, or convey it away?

That its *status*, character, condition in the eye of the law, was essentially changed by the provisions of the statute, is unquestionable. The intention to sell it in violation of law rendered it liable to seizure, confiscation and destruc-

Hamilton *v.* Goding.

tion, or to be transferred to the town or city for lawful sale by its agent. But the same law made distinct and clear provision for such seizure and condemnation by the officers of the law, under legal process and procedure, after due notice and giving a right to any claimant to appear and claim the property. But this liquor was never so seized. Nothing is said in the law about the rights of private persons to seize or convert the liquors. Now, on what ground is it claimed that, before any such action by the authorities under the law, any unauthorized person may anticipate the regular action of those entrusted with the duty, and take the property from the possession of the owner, and do with it all, and more than all, that the legal officers could do.

Is it on the ground that the liquor thus held becomes at once a nuisance, public or private, and may be abated, as such, by any private person?

It would be difficult for the most ingenious and ardent friend of temperance to seriously maintain the proposition, that liquors, against which all that could be proved is that the owner intended them for sale, but had never so offered them, — were at common law a nuisance, within any recognized definition of that offence. Liquor is not in itself a nuisance. *Preston* v. *Drew, ubi supra; Brown* v. *Perkins,* 12 Gray, 89. We do not question the right of the Legislature to determine what shall be regarded as a nuisance. We do not question the soundness of the views taken by the Court in the above case of *Brown* v. *Perkins.* On the contrary, we refer to it, without quoting from it, as a clear, strong and correct statement of the extent of legislative power on this subject.

But the first question is whether the Legislature has declared that liquors, not offered for sale, but intended to be so offered, are to be held and treated as a common nuisance. The language of the statute now in force does not in any form declare them expressly to be a nuisance. In § 13, c. 33, laws of 1858, liquors thus held are declared to be "contraband and forfeited to the cities, towns and plantations in which

they are so kept, at the time when they are seized by virtue of any of the provisions of this Act." The Act then goes on to specify, in detail, the mode by which the liquors may be complained of, seized, tried and condemned, by due-process of law, to be destroyed or given over to the town. If the law-makers had intended to make them a nuisance, which any man might abate, it would have been a shorter way to effect their object to so declare in express and unqualified terms.

But, if we could find that the statute declared that to be a nuisance which was not one before, the point here would not be reached, unless we can find that the same statute, or statutes, had given to private persons the right to abate it, without process of law; and, in this particular case, whether it had given the power to choose their own mode of abatement, and substitute a seizure under process, afterwards abandoned, and a transfer of the liquor to another jurisdiction, to be there again sold or used, instead of the effectual abatement by destruction by pouring it out upon the thirsty sand, which could drink it with impunity. As before stated, there is no such right or authority given by the statute in direct terms. Is it to be inferred from the other provisions?

If a nuisance at all, it is a public nuisance, for the statute only deals with the subject as one of common and general concern, and attempts to guard the whole people from the demoralizing and destructive effects of the liquor traffic, which can in no proper sense be regarded as a private injury, so peculiarly affecting an individual member of the community as to enable him, of his own motion, to abate it as a nuisance.

In the case of *Brown* v. *Perkins*, 12 Gray, 89, C. J. SHAW has stated, in the rescript sent down, the conclusions, without elaboration of the Court, overruling his own charge to the jury. One of the propositions is, that an individual may abate a private nuisance which injures him, when he might maintain an action; and, also, when a common nuis-

ance obstructs him in the exercise of his individual right. An unlawful obstruction across a highway, or navigable stream, may be removed by any one who has occasion to pass over, either by himself or his property.

It was also held that, by the common law, it was not lawful for any and all persons to abate a common nuisance, merely because it is a common nuisance, although the rule has sometimes been stated in terms so general as to give some countenance to this supposition; and, further, that the power has not been given to individuals, without process of law, to vindicate public right; but the only power thus given to the private citizen is to remove or abate a common nuisance when his individual right to act is obstructed, or prevented, by such nuisance. It was further held that spirituous liquors are not of themselves a common nuisance, and, if a nuisance at all, are made such by the statute, which provides a mode for their destruction; that, when a statute declares that to be a common nuisance, which was not one before, and specifies and directs the mode of abating it, that is the only mode which can be pursued, and that it is not lawful for any private person to destroy the property by way of abatement of a common nuisance.

The Court in Massachusetts has also, in several cases, practically applied these principles. In *Evans* v. *Walker*, 9 Gray, 95, and in *Arthur* v. *Flanders*, 10 Gray, 107, where liquors had been seized by an officer, acting under a regular warrant, the officer, failing to show a legal right to take and hold a part of the liquor seized, undertook to defend as to such part, by showing that all the liquors taken were held by the owner with intent to sell them in violation of law, and therefore, that no action could be maintained for their value; the Court overruled the point made, and held that the officer could not thus protect himself. And these decisions were made under a law of Massachusetts, which declared that no action should be maintained against any officer for seizing, detaining or destroying liquor or the vessels in which it was kept, unless such liquor and vessels

were legally kept by the owner. The Court held that the Act did not in its terms protect the officers in the above cases. And further, that, if the statute had so undertaken to leave the owner remediless for injury to property, and with no right to be heard, they should not hesitate to say that it was a clear violation of the bill of rights in the constitution.

The question, how far a person can defend an otherwise indefensible act, by showing the criminal or unlawful act on the part of the party injured, has of late years been fully discussed in the courts of this country and England. The result, generally reached is that no man can set up a public or private wrong, committed by another, as an excuse for a wilful or unnecessary, or even negligent injury to him or his property. This principle is defended on the grounds of morality and law, and it reaches and determines a great variety of cases. It may be regarded as among those condensed maxims or statements of the common law, which, by their simplicity and brevity, and, more than all, by their flexibility and almost universality, give to that system its wonderful adaptedness to the varying circumstances of particular cases as they arise, and to the changing condition of society and its new combinations and discoveries.

The common law does not arm and send forth single knights errant to vindicate its authority or avenge its wrongs, by inflicting punishment on supposed offenders, according to the individual opinion and judgment of the avenger. Much less does it authorize any Quixote to assume, of his own will and motion, that character, and sally forth to put down even acknowledged evils and wrongs.

Private action is, as a general rule, confined to private wrongs, and then only to be used when it becomes necessary to prevent or remove imminent and present obstructions to the exercise of his private right.

Many recent English cases are found which illustrate and adopt these views. It is held that it is not enough for a defendant, to show an illegal act or intent on the part of the

plaintiff, even if it constitutes a public nuisance. Want of care, in driving, for instance, on the highway, cannot be excused by proving that plaintiff's animal, which was injured, was illegally there, or that the plaintiff was driving on the wrong side of the way, contrary to the statute. The rule clearly to be deduced from these cases, is that the fact of the existence of a nuisance, created by one party, or any illegal doing on his part, will not give a right of action, or be regarded as a defence, where there has been a want of due care to avoid injury, and where the other party has voluntarily, and with no other excuse, injured or destroyed or converted the property. *Davies* v. *Mann*, 10 M. & W., 548; *Bridge* v. *G. Junction Railroad Co.*, 3 M. & W., 244; *Mayor of Colchester* v. *Brooks*, 7 Queen's Bench, 339; *Bateman* v. *Black*, 18 Ad. & Elles, N. S., 870, (83 E. C. Law,); *Dunes* v. *Petley*, 15 Q. Bench, 276.

The same doctrine is recognized in this State in the case of *Bigelow* v. *Reed*, 51 Maine, 325.

The application of these principles to the case before us is apparent.

If, then, spirituous or intoxicating liquors are property which the law will protect, until itself interferes and claims them on the ground of an illegal intent to sell them, on the part of the possessor, — if that intent does not change or destroy the property in the liquors, so as to make them, in the language of the law, derelict and liable to be seized, destroyed or carried away by any person at his will, — if the statute which denounces the holding with the intent, declares that they may be seized under a legal process and judicially condemned after hearing all claimants, and points out the mode, can this fact of holding with an alleged intent be invoked in defence by one who has not himself sought the aid of the law, either by its civil or criminal process, and stands a naked trespasser on his neighbor's property, because, as he alleges, and is prepared to prove, that neighbor intended to use the property in an illegal manner?

We have seen that he cannot justify himself on the ground of nuisance, and as a volunteer enforcer of law.

The only question left, is whether there is any such authority given, directly or by necessary inference, by the Legislature in the statutes passed on this subject. We can find none.

It is insisted that, by the law and the decisions, no action for a tort can be maintained when the subject matter is intoxicating liquors. The reason assigned, whether intended for illegal sale or not, is a technical one. It is said that by a recovery at law, in an action of trespass or trover, of the value of a specific chattel, of which the possession has been acquired by tort, the title is altered by the recovery, and is transferred to the defendant and, the damages recovered on the price of the chattel, which is sold by operation of law, and thus the law is a law-breaker, and is guilty of an unlawful sale of liquor, if it allows the plaintiff to recover.

This is certainly an ingenious argument, but it proves too much. According to this theory, a man in possession of liquors, with no intent to sell them, but to use them himself, perhaps medicinally, can maintain no action against the person who has carried them off and converted them to his own use. The prohibition of the statute is against the sale "by any person or persons." It is true that it has been decided that there can be no sale of liquors by an officer on execution. *Nichols* v. *Valentine*, 36 Maine, 322. The reason given is, that all persons, except town agents, are prohibited from selling,—"it would be an absurdity to say that the officers of the law may become the vendors." But the sale, intended by the statute, is the transferring of the property from one person to another by the agreement and acts of those persons for a consideration agreed upon. When the title passes, not by act of sale, but by operation of law, it is not a sale "by any person or persons." When goods are sold on execution, the title passes by virtue of the public sale, as in other cases of sale,—not by mere op-

Hamilton *v.* Goding.

eration of law, transferring the title, without any act of sale. In the latter case, the law is not a vendor nor does the title pass as to a vendee. It is not within the language or intent of the statute forbidding sales by any person or persons, for it is not a sale, and it is no act of any person.

It is further urged that if these liquors were kept and deposited in this State by the plaintiff for illegal sale, that no action can be maintained against the defendant.

It is contended that, by the decisions of this Court, no such action can be sustained.

It will be found, on examination, that the cases relied upon were decided in suits arising under the Act of 1851, c. 211, § 16, and Act of 1855, c. 166, § 23. That statute declared that " no action of any kind should be had or maintained in any Court in this State, for the recovery or possession of intoxicating or spirituous liquors, or the value thereof."

This was clear and inclusive language, reaching, in its terms, torts as well as contracts. But the Court held strongly, in *Preston* v. *Drew*, 33 Maine, 558, that the generality of this language must be restricted to cases in which the liquor was held with an intent to sell unlawfully, as before stated. But, in this case, and in the case of *Black* v. *Mc-Gilvery*, 38 Maine, 287, and in *Lord* v. *Chadbourne*, 42 Maine, 429, and in *Robinson* v. *Barrows*, 48 Maine, 186, and perhaps some other cases, the Court did decide, in substance, that the statute, thus restricted, did positively and directly prohibit the maintenance of any action, either contract or tort, for liquors thus held with an intent to sell. It is difficult to perceive how any other construction could have been given to that section of the statute, if it was held in any degree constitutional. The prohibition against any action was positive and without qualification or restriction. These decisions rest, so far as they are authoritative, upon this language of the statute. Has that prohibition been retained in the statute in force at the time this cause of action accrued?

The history of the legislation in this State, on this sub-

ject, may be thus briefly stated. In 1846, by c. 205, § 10, it was provided that " no action should be maintained upon any claim or demand, whether it be note, account, bond, order, draft, acceptance or other security or evidence whatsoever, made, had or given, in whole or in part, for wine, brandy, &c., sold in violation of the provisions of this Act," but not to extend to negotiated paper in hands of *bona fide* holders.

A construction was given by the Court to this section, in *Sullivan* v. *Park*, 33 Maine, 428, which was trover for a cask of alcohol. It was contended that the action was prohibited by this section. It was held that " the Act relates to contracts. It does not prohibit suits for acts of tort."

The next year after this decision, the Act of 1851, before recited, was passed, making the prohibition of any action distinct and absolute. The same prohibition is found in the Act of 1855. This remained in force until 1858, when the present liquor law was enacted. The Legislature had the former statutes before them and also the decisions of the Court, under the Act of 1846, and also those under the Act of 1851.

In the new Act of 1858, they adopt, in substance, the provisions of the Act of 1846, in language somewhat condensed, but limiting the restriction to actions on claims or demands contracted or given for intoxicating liquors sold in violation of the Act. No language is used like that in the statute of 1851.

The conclusion seems manifest that the Legislature deliberately decided between the two provisions and adopted the law of 1846, and its construction by the Court. And, in effect, intended to adopt the doctrine which limits the prohibition to actions on contract. There being positive prohibition of any action of tort, the case must rest upon the general principles of law, applicable to the facts, which we have before considered. Our conclusion is, that proof of an intention to sell the liquors unlawfully, by the plaintiff, would not be a defence to an action against one who had

taken them from him without any right to interfere with them, except under the claim made, that the intent to sell gave a right to any person to seize or destroy them, or at least debarred the plaintiff from any legal remedy or redress. This was in effect the instruction given.

The jury found specially that there was no intent to sell these liquors unlawfully in this State. The defendant claims that that finding was against the evidence, and also, that the ruling being that such intent, if proved, would not be a defence, the jury might well infer that it was of no consequence how they answered the question. The answer, in the view we have taken, is immaterial, as it could only be material in case the fact of intent was important. The view we have taken assumes the existence of such intent, and disregards the special finding, and looks only to the ruling of the Judge. It is not necessary for us to consider whether the finding was against the evidence or not.

The ruling of the Judge, as to the liability of the sheriff for the acts of his deputy, appear to be in accordance with well settled law. The learned counsel for the defendants makes no point on this ruling in his argument.

*Motion and exceptions overruled.*
*Judgment on the verdict.*

WALTON, DICKERSON, BARROWS, DANFORTH and TAPLEY, JJ., concurred.

APPLETON, C. J., concurred in the result.